UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

SHAMAINE D. NIALS and MATTHEW A. NIALS
                              Plaintiffs,

                    -v-

BANK OF AMERICA, ET AL.
                              Defendants.
------------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: MAR 2 1 2014

13 Civ. 5720 (AJN)

MEMORANDUM AND
ORDER

ALISON J. NATHAN, District Judge:

The Court has before it four motions to resolve in this matter.  First, the Defendant

Federal Deposit Insurance Corporation, as Receiver for Washington Mutual Bank, ("FDIC")

moves to dismiss the claims against it based on this Court's lack of jurisdiction.  Second,

Defendant Bank of America, N.A., moves to dismiss the Complaint for failure to state a claim

upon which relief can be granted.  Third, Defendants JPMorgan Chase Bank, N.A.

("JPMorgan"), Federal National Mortgage Association, and Mortgage Electronic Registrations

Systems, Inc. (collectively, the "JP Morgan Defendants") have filed a copy of their state court

motion to dismiss, and Plaintiffs' opposition to that motion, and ask that it be considered in this

matter.  Finally, Plaintiffs, proceeding pro se, move to remand this matter to the Supreme Court

of New York, County of Orange.

## I.     BACKGROUND

### A. Allegations in Plaintiff's Complaint

#### 1.  Factual Allegations

This litigation concerns certain real property located in Middletown, New York, to which

Plaintiffs claim title.  (Compl. ¶¶ 3-4).  In general terms, Plaintiffs contend that they are the

"lawful homeowners" of this property (Compl. ¶ 11) and that the various Defendants have unlawfully asserted ownership interests in the property.

The exact alleged roles and activities of the Defendants in this litigation are difficult to discern from the allegations of the Complaint, but the crux of Plaintiffs' claims is that one or more mortgages to their property have been issued by or are held by one or more of the Defendants and subsequently "securitized," resulting into a "'note' bearing the MIN #: 1000159-0218303010-3." (Compl. ¶¶ 5, 11, 17-18). Specifically, Plaintiffs assert that the "alleged originating 'mortgage lender' and others alleged to have ownership of plaintiffs mortgage and note have unlawfully sold, assigned and/or transferred their ownership and security interests in the Promissory Note and Mortgage related to the property in a secretive securitization bargain/arrangement, and thus no longer have any cognizable legal or equitable interest in plaintiffs home." (Compl. ¶ 11). Plaintiffs describe "'[s]ecuritization' [a]s the process whereby 'mortgage loans' are turned into securities, or bonds, and sold to investors by parties participating in different capacities defined in a document known as [a] pooling and servicing agreement" and characterize it as a "deceptive venture" intended to provide a "gigantic pool of money to the parties participating" and those who buy into the venture. (Compl. ¶¶ 17-18).

To the extent that the Complaint provides a specific theory as to how the securitization of Plaintiffs' mortgage loans divested the Defendants of an interest in the property, Plaintiffs allege that "[t]he loans . . . were pooled together and then dumped inside a tax-free arrangement which must remain 'bankruptcy remote' more specifically known as Real Estate Investment Conduct (herein after, 'REMIC')." (Compl. ¶ 19). They claim that, for the IRS to recognize this tax-free status, "the pooling parties must strictly adhere to the procedure of 'selling the loans' by conveying 'without recourse' wherein the party who conveys any alleged interest it held to the

2

REMIC TRUST was forbidden from returning to assert any claims legal or equitable in the said security interest in a process of false recoupment." (Compl. ¶ 20; *see also* Compl. ¶¶ 29-30). They further allege, for example, that Defendants

> [swore] under oath with the Securities and Exchange Commission ("SEC") and the Internal Revenue Service ("IRS"), that defendants . . . as mortgage asset 'pass through' entities,' wherein they can never own the mortgage loan assets in the MBS, allows them to qualify as a Real Estate Mortgage Investment Conduit ("REMIC") rather than an ordinary Real Estate Investment Trust ("REIT").

(Compl. ¶ 56). In short, it appears that Plaintiffs allege that, by virtue of being pooled in a REMIC, the Defendants sold these mortgage loans or otherwise surrendered their interest in them.

### 2. Claims

Plaintiffs' Complaint distinctly brings four causes of action. As their First Cause of Action, Plaintiffs assert a claim for "Predicate/overt acts within the civil RICO laws" and "Violations of Civil RICO, 18 U.S.C. § 1961 et seq." (Complaint at 10, 17). Plaintiffs' three other causes of action are for, respectively, "Defamation of Credit," "Violations of New York State Consumer Fraud Act," and "Conspiracy to Defraud." (Compl. at 14-15). Construing the Complaint liberally, the Court understands Plaintiffs to be asserting causes of action for a civil violation of the Racketeer Influenced Corrupt Organizations Act, particularly under 18 U.S.C. § 1962(a); a violation of the Fair Credit Reporting Act ("FCRA"); violations of New York General Business Law § 349; and conspiracy to defraud. (*See* Compl. at 5, 10, 14-15, 17).

In addition to these four claims, Plaintiffs also recite a laundry list of other alleged legal violations by the Defendants:

> Quiet Title to property named in this action, Fraudulent/Unconscionable bargain, Fraud in factum, Fraud in the Concealment, Fraud in the Inducement, Intentional Infliction of Emotional Stress, Asserting claims to the title of property in this action by false pretenses,  slander of title, malicious dispossession of private

property, Declaratory Relief, Violations of TILA, Violations of RESPA,
Re[s]cission, Deceptive Bargaining & Fiduciary Malfeasance, Deceptive trade
practices in violation of N.Y. GBS § 349.

(Compl. at 5). Subsequent portions of Plaintiffs' Complaint suggest that they intend to

assert at least some of these causes of action, notwithstanding that they have not pleaded

them with the utmost clarity. For example, Plaintiffs allege that they "bring causes of

action against all named defendants for fraud, intentional infliction of emotional stress,

rescission, declaratory relief and violations of T.I.L.A. and R.E.S.P.A., upon the facts and

circumstances surrounding Plaintiffs original loan transactions [and] its subsequent

securitization." (Compl. ¶ 12). Likewise, due to these alleged violations they ask the

Court to "quiet title" in their property and award other relief. (Compl. ¶ 13). Beyond

listing these causes of action and referring generally to the allegations discussed above,

however, Plaintiffs do little to suggest the basis for these claims.

### 3.  Procedural History

Plaintiffs filed this litigation in the Supreme Court of New York, County of Orange. On

August 15, 2013, the FDIC removed the case to this Court pursuant to 12 U.S.C. § 1819(b)(2)(B)

and 28 U.S.C. §§ 1331, 1441(a) and, on August 22, 2013, the FDIC and Bank of America filed

the motions to dismiss referenced above. In response, the Court ordered that Plaintiffs would be

allowed to amend their Complaint to correct any deficiencies raised by the motions to dismiss

and that, if they failed to do so, they would not be provided a further opportunity to amend to

address the issues raised in those motions. (Dkt. No. 17). On September 3, 2013, the JPMorgan

Defendants submitted a letter attaching briefing that they had submitted in New York State

Court, and a copy of Plaintiffs' opposition to that motion. (Dkt. No. 20). They asked that the

Court consider these papers as a fully briefed motion to dismiss. (Dkt. No. 20).

Rather than amend their Complaint or respond directly to the motions to dismiss, Plaintiffs elected to file a motion to remand on September 11, 2013. (Dkt. No. 22). To ensure that Plaintiffs were aware of the motions to dismiss and had an opportunity to amend their Complaint or otherwise respond to these motions, the Court issued an order on October 15, 2013, extending their time to respond. (Dkt. No. 28). Plaintiffs did not amend their Complaint, but did submit a reply brief in support of their request that the case be remanded. (Dkt. No. 29). Because Plaintiffs failed to avail themselves of the opportunity to amend their Complaint, to the extent that the Court dismisses their claims, it does so with prejudice.

## II.   MOTION TO REMAND

Plaintiffs move to remand this litigation to state court. Their primary contention— articulated in several different ways—is that the Court lacks subject matter jurisdiction because their quiet title claim and the validity of any assignments or mortgages at issue in this litigation are governed by state law. (Mot. to Remand ¶¶ 1-2, 6-12, 17-21). This Court, however, has subject matter jurisdiction under 28 U.S.C. § 1331 both because the Court construes Plaintiffs' Complaint as raising claims under federal law, including RICO, TILA, RESPA, and the FCRA, and also because the FDIC is a party. *See* 12 U.S.C. § 1819(b)(2)(A) ("[A]ll suits of a civil nature at common law or in equity to which the [FDIC], in any capacity, is a party shall be deemed to arise under the laws of the United States."). That Plaintiffs also raise state law claims does not preclude this Court from hearing this litigation because the existence of subject matter jurisdiction over the federal claims in this matter empowers the Court to hear related state law claims under 28 U.S.C. § 1367. *See Russell v. Crossland Sav. Bank*, 111 F.3d 251, 256 (2d Cir. 1997) (noting that federal question jurisdiction based on 12 U.S.C. § 1819(b)(2) complies with Article III of the Constitution and also that 28 U.S.C. § 1367(a) provides for supplemental

jurisdiction over state law claims in these circumstances); *cf. also Tamir v. Bank of N.Y. Mellon*, No. 12-cv-4780, 2013 U.S. Dist. LEXIS 122033, at *17-18 (E.D.N.Y. Aug. 27, 2013) (noting, as an alternative to the court's decision, that the court would not exercise supplemental jurisdiction over a quiet title action in the absence of a viable federal or state law claim).[1]

Plaintiffs also argue that they did not consent to removal of this action and that not all Defendants have consented to removal. (Mot. to Remand ¶¶ 11, 14-16). As to the former point, Plaintiffs' consent is not necessary to remove an action from state court to federal court. *See* 28 U.S.C. §§ 1441(a), 1446; 12 U.S.C. § 1819(b)(2)(B). As to the latter point, the Court construes this as an argument that Defendants' unanimous consent for removal was not obtained pursuant to 28 U.S.C. § 1446(b)(2). However, because this matter was removed pursuant to 12 U.S.C. § 1819(b)(2)(B), such consent is not required. *See Franklin Nat'l Bank Sec. Litigation v. Andersen*, 532 F.2d 842, 846 (2d Cir. 1976); *Castrillo v. City of New York*, 19 F. Supp. 2d 174, 175 (S.D.N.Y. 1998).

The remainder of Plaintiffs' arguments are also meritless. First, they contend that the removal statute should be strictly construed, and all doubts should be resolved in favor of remand. (Mot. to Remand ¶13). While an accurate statement of the law, *see Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 220 (2d Cir. 2013), because jurisdiction here is clear, it does not justify remand. Finally, Plaintiffs attack the attorney affirmations submitted in this matter as "void, conclusory hearsay." (Mot. to Remand ¶ 22). The Court's decision to deny the motion to

---

[1] Plaintiffs quote at length from *American Ins. Co. v. 356 Bales of Cotton*, 26 U.S. 511, 546 (1828) in arguing that jurisdiction does not comply with the Constitution. The above analysis suffices to demonstrate the statutory and constitutional basis for federal question jurisdiction. The quoted portion of *356 Bales of Cotton* is not pertinent as it was referring to courts created by a territorial legislature, not the jurisdiction of Article III federal courts, and whether those Courts could be vested with admiralty jurisdiction.

remand, however, is based on the allegations of Plaintiffs' Complaint, not these attorney affirmations.

## III.   MOTION TO DISMISS FOR LACK OF JURISDICTION

The FDIC moves to dismiss the claims against it for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  A case is properly dismissed under Rule 12(b)(1) where the district court lacks the statutory or constitutional power to adjudicate it.  *Brady v. Int'l Bhd. of Teamsters, Theatrical Drivers & Helpers Local 817*, 741 F.3d 387, 389 (2d Cir. 2014).  "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence."  *Liranzo v. United States*, 690 F.3d 78, 84 (2d Cir. 2012) (quotation marks omitted).

### A.  Facts

The FDIC's involvement in this action is based on its status as Receiver for Washington Mutual Bank ("WaMu").  (*See, e.g.*, Compl. at 4; *see also* FDIC Mot. at 3-4).  As noted above, the Complaint is not abundantly clear as to the precise roles of the various Defendants, including WaMu, but it appears that WaMu originated a mortgage loan for the Plaintiffs' property on or about March 2002, prior to its failure and receivership.  (Compl. Ex. A (deed of sale dated March 8, 2002); Compl. Ex. B; Compl. Ex. C (Purchase and Assumption Agreement between the FDIC and JPMorgan as to assets of WaMu); *cf.* Nelson Decl. Ex. C (notice of claim); FDIC Mot. at 5).

On September 25, 2008, the Office of Thrift Supervision declared WaMu insolvent and appointed the FDIC as Receiver for the failed institution.  (Nelson Decl. ¶ 3 & Ex. A).  On the same day, the FDIC sold WaMu's assets and certain designated liabilities to JPMorgan pursuant to a Purchase and Assumption Agreement ("P&A Agreement").[2]  (Nelson Decl. ¶ 4).   In particular, that agreement provided:

---

[2] A partial copy of this agreement is attached to Plaintiffs' Complaint as Exhibit C, and is found in full on the FDIC's website at <www.fdic.gov/about/freedom/Washington_Mutual_P_and_A.pdf>.  (Nelson Decl. at ¶ 4).

7

> 2.5 **Borrower Claims.** Notwithstanding anything to the contrary in this
> Agreement, any liability associated with borrower claims for payment of or
> liability to any borrower for monetary relief, or that provide for any other form of
> relief to any borrower, . . . related in any way to any loan or commitment to lend
> made by [WaMu] prior to failure . . . or otherwise arising in connection with the
> [WaMu] lending or loan purchase activities are specifically not assumed by
> [JPMorgan].

(P&A Agreement § 2.5).  The agreement also provided for certain liabilities and

obligations assumed by JPMorgan, including that it "specifically assumes all mortgage

servicing rights and obligations of [WaMu]." (P&A Agreement § 2.1).

The FDIC's Claims Office then prepared and published in several major newspapers a

"Publication Notice to Creditors and Depositors of Washington Mutual Bank, Henderson, NV"

setting forth the requirement that claims against WaMu be submitted to the FDIC no later than

December 30, 2008.  (Nelson Decl. ¶ 5 & Ex. B).  After Plaintiffs filed this lawsuit, the FDIC

also mailed them a "Notice to Discovered Creditor to Present Proof of Claim" which explained

that, although the claims bar date had passed, the FDIC "may" consider their claim if they

submitted a Proof of Claim no later than October 15, 2013.  (Nelson Decl. ¶ 6 & Ex. C).

Plaintiffs have not alleged, submitted any evidence, or made any representation that they have

filed a Proof of Claim and, at least as of August 22, 2013, the filing date of the FDIC's motion to

dismiss, they had not done so.  (Nelson Decl. ¶ 8).

### B.  The Borrower Claims

Based on these facts, the FDIC's argument proceeds in two parts.  First, they contend

that, as to the Borrower Claims, the FDIC is the only proper defendant and, in particular, that

JPMorgan may not be held liable on these claims.  Second, the FDIC argues that no court can

exercise jurisdiction over the Borrower Claims because Plaintiffs did not comply with the

mandatory administrative claims process.

8

1.  The FDIC is the proper defendant as to the Borrower Claims

As to the first part of the FDIC's argument, the Court agrees that, to the extent that the Complaint seeks to impose liability in connection with WaMu's pre-failure lending activities, it is the FDIC, not JPMorgan, who is the proper defendant. Numerous courts have analyzed precisely the P&A Agreement that governs the allocation of liability in this case and have held that the FDIC is the proper defendant under these circumstances; the Court agrees with these decisions. *See, e.g.*, *Yeomalakis v. FDIC*, 562 F.3d 56, 60 (1st Cir. 2009) ("When Washington Mutual failed, Chase Bank acquired many assets but its agreement with the FDIC retains for the FDIC 'any liability associated with borrower claims for payment of or any liability to any borrower for monetary relief, or that provide for any other form of relief to any borrower.'"); *JPMorgan Chase Bank, N.A. v. Nell*, No. 10-cv-1656, 2012 U.S. Dist. LEXIS 42173, at *10-11 (E.D.N.Y. Mar. 27, 2012); *Diez v. Wash. Mut. Bank*, No. 09-cv-2390, 2012 U.S. Dist. LEXIS 23335, at *9-10 (E.D.N.Y. Feb. 23, 2012); *Caires v. JP Morgan Chase Bank*, 745 F. Supp. 2d 40, 49-50 (D. Conn. 2010); *Cassese v. Washington Mut., Inc.*, No. 05-cv-2724, 2008 U.S. Dist. LEXIS 111709, 5-7 (E.D.N.Y. Dec. 22, 2008); *cf. also* 12 U.S.C. § 1821(d)(2)(A)(i) (providing that, as Receiver, the FDIC succeeds to the rights, titles, powers, and privileges of the insured depository institution).

Thus, to the extent that Plaintiffs' claims relate to WaMu's pre-failure lending activities, they must be asserted against the FDIC, not JPMorgan.[3]  However, a liberal interpretation of Plaintiffs' Complaint suggests that Plaintiffs have attempted to plead claims against JPMorgan in

---

[3] Although the inartful pleading of the Complaint makes determining which claims assert liability for Borrower Claims difficult, the Court notes that the RICO, NY GBL § 349, RESPA, TILA, and various fraud claims appear, at least in part, directed toward such pre-failure lending activity. Ascertaining this point with certainty is complicated by the Plaintiffs' failure to plead facts to support many of these claims, but that issue relates to Plaintiffs' failure to state a claim rather than the jurisdictional question the Court is presently discussing.

connection with JPMorgan's subsequent servicing of the mortgage and related activities.  Such claims include at least Plaintiffs' slander of title claim, and their claims under the FCRA and RICO based on Defendants' allegedly false assertions that the Defendants hold an interest in the Plaintiffs' property.  It does not appear that any party argues that the FDIC is the proper defendant for claims that do not arise from WaMu's pre-failure lending activity or asserts a plausible basis for such liability.  *See, e.g.*, *Caires*, 745 F. Supp. 2d at 49-50 ("In considering the Complaint pursuant to Rule 12(b)(1), the Court must . . . distinguish between claims relating to lending activities as distinguished from claims relating to mortgage servicing."); *cf. Nell*, 2012 U.S. Dist. LEXIS 42173, at *14-22 (dismissing borrower claims for lack of jurisdiction against the FDIC due to failure to exhaust the claims process and dismissing non-borrower state law claims in its discretion not to hear such claims under supplemental jurisdiction).

As such, the Court reaches the following three conclusions.  First, to the extent that Plaintiffs assert Borrower Claims against JPMorgan, these claims are improper and must be dismissed.  Second, to the extent that Plaintiffs assert claims against JPMorgan based on its later activities in servicing of Plaintiffs' mortgage loans, it does not appear that the P&A Agreement renders the FDIC, rather than JPMorgan, the proper defendant for those claims.  The Court will address below the motions to dismiss as to these claims.  Third, the FDIC is the proper defendant as to the Borrower Claims and, in addition, the Complaint does not appear to state any basis for the FDIC's liability independent of the Borrower Claims or its status as Receiver for WaMu.  The Court will now turn to the question of whether the Plaintiffs may bring these Borrower Claims against the FDIC.

2. This Court cannot review the Borrower Claims against the FDIC

The Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA") established a comprehensive scheme governing the FDIC's authority and powers as Receiver, including a mandatory administrative claims process for filing and resolving claims against a failed depository institution. *See* 18 U.S.C. § 1821(d)(3)-(13); *Resolution Trust Corp. v. Elman*, 949 F.2d 624, 627 (2d Cir. 1991); *Nell*, 2012 U.S. Dist. LEXIS 42173, at *14-15. In particular, courts lack jurisdiction over all claims against the failed institution unless jurisdiction is authorized by virtue of exhaustion of the claim through the mandatory claims process. *See* 12 U.S.C. § 1821(d)(13)(D) (limiting judicial review); *id.* § 1821(d)(6)(A) (providing for agency review of claims); *Resolution Trust Corp.*, 949 F.2d at 627 (explaining that "a claimant must first present its case to the RTC under the administrative procedure erected by FIRREA before seeking relief in the federal courts"); *Constas v. JP Morgan Chase Bank, NA*, No. 11-cv-00032, 2012 U.S. Dist. LEXIS 85339, at *7-13 (D. Conn. June 20, 2012); *Nell*, 2012 U.S. Dist. LEXIS 42173, at *14-15 ("The FIRREA, at 12 U.S.C. § 1821(d)(13)(D), deprives courts of subject matter jurisdiction over claims against an institution in FDIC receivership until the claimant complies with a mandatory statutory claims procedure."). Notwithstanding that the FDIC published notices in several newspapers and sent a notice directly to the Plaintiffs of this claims process, it does not appear that Plaintiffs exhausted their claims against the FDIC. *Nell*, 2012 U.S. Dist. LEXIS 42173, at *17-18 (noting that it is plaintiff's burden to prove jurisdiction). These claims are, therefore, not subject to the jurisdiction of this Court.

In the alternative, as the FDIC also notes, even if Plaintiffs had complied with the mandatory claims procedure, this Court would not have jurisdiction over the claims against the FDIC. This is because those claims can only be brought in the United States District Court for the District of Columbia or the district court in which WaMu maintained its principal place of

business—the Western District of Washington.  (Nelson Decl. ¶ 3).  *See* 12 U.S.C. §

1821(d)(6)(A); *Jaffe v. Capital One Bank Servs.*, No. 09-cv-4106, 2010 U.S. Dist. LEXIS 18117,

at *7 (S.D.N.Y. Mar. 1, 2010).  Moreover, FIRREA also precludes this Court from granting

equitable relief or punitive damages.  *See* 18 U.S.C. §§ 1821(j), 1825(b)(3); *Volges v. Resolution

Trust Corp.*, 32 F.3d 50, 53 (2d Cir. 1994); *Cassese*, 711 F. Supp. 2d at 273.

Because the only arguable basis for claims against FDIC revealed by the Complaint is its

status as Receiver for WaMu, the discussion above is fatal to the claims against that institution.

The claims against the FDIC are dismissed.

## IV.    MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

Bank of America and the JPMorgan Defendants each submit motions to dismiss the

Complaint in its entirety.  For the reasons discussed below, the Court dismisses the claims

arising under federal law, but does not reach the merits of the state law claims at this time.

### A.  Legal Standard

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the

complaint are accepted as true and all reasonable inferences must be drawn in favor of the non-

moving party.  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).  To

survive a motion to dismiss for failure to state a claim, the Plaintiff must plead "enough facts to

state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the conduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In considering a motion to dismiss for failure to

state a claim pursuant to Rule 12(b)(6), a district court may consider "the facts alleged in the

complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

"[A] *pro se* complaint is entitled to a particularly liberal reading," *Lopez v. Jet Blue Airways*, 662 F.3d 593, 596 (2d Cir. 2011), and is construed "to raise the strongest arguments that [it] suggest[s]." *Chavis v. Chappius,* 618 F. 3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted) (alteration in original)). However, pro se submissions are not exempted from the plausibility standard set forth in *Iqbal* and *Twombly*. *See Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011). Moreover, the Court does not assume legal conclusions are true and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Harris v. Mills,* 572 F. 3d 66, 72 (2d Cir. 2009) (quotation marks omitted).

In this case, Plaintiffs have failed to oppose Defendants' motion to dismiss. Nevertheless, the Court must still "assume the truth of [the] pleading's factual allegations and test . . . its legal sufficiency." *McCall v. Pataki,* 232 F. 3d 321, 322 (2d Cir. 2000).

**B. Analysis**

1. <u>RICO</u>

Defendants set forth numerous bases to dismiss Plaintiffs' RICO claim, of which the Court need only consider one: Plaintiffs have failed to adequately plead any predicate RICO violations because they have failed to meet the heightened pleading standard of Rule 9(b).[4]  In

---

[4] Plaintiffs have not alleged any factual basis for the Court to conclude that the transactions underlying issuance of their mortgage loans or the securitization of those mortgage loans were unlawful or constitute a predicate act under RICO. *See, e.g., Rodenhurst v. Bank of Am.*, 773 F. Supp. 2d 886, 898 (D. Haw. 2011) ("[C]ourts have uniformly rejected the argument that securitization of a mortgage loan provides the mortgagor a cause of action."). To the extent that Plaintiffs invoke 18 U.S.C. § 1962(a) in an effort to claim this case involves an unlawful debt, this contention is meritless—that term refers debts incurred in connection with unlawful gambling activity or usurious lending. *See* 18 U.S.C. § 1961(6).

particular, the extent of Plaintiffs' efforts to plead any predicate acts under RICO is to state in conclusory terms that the Defendants have fraudulently used the mails or email "to circulate unfounded claims of 'debt,'" have engaged in other acts of fraud in claiming an interest in Plaintiffs' property, or have fraudulently damaged Plaintiffs' credit by making false reports. (Compl. ¶¶ 23-33, 49, 53-54, 56).

Plaintiffs' allegations do not meet the heightened pleading standard for claims of fraud. *Cruz v. Fxdirectdealer, LLC*, 720 F.3d 115, 120 n.2 (2d Cir. 2013) (noting that Rule 9(b) applies to RICO claims and requires the plaintiff to state with particularity the circumstances constituting fraud). "To satisfy this requirement, a complaint must specify the time, place, speaker, and content of the alleged misrepresentations, explain how the misrepresentations were fraudulent and plead those events which give rise to a strong inference that the defendant[ ] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013). Plaintiffs' allegations meet none of these requirements and Plaintiffs' RICO claim is, therefore, dismissed.

2. FCRA

Plaintiffs' claim under FCRA fares no better. Plaintiffs allege that "[a]s a direct result of Defendants . . . filing unfounded foreclosure lawsuits against the [Plaintiffs], they have defamed, ruined, and irreparably damaged plaintiffs' credit as the lawsuit is a matter of public record" and that Bank of America "fraudulently report[ed] unfounded non-payment of mortgage to the various credit bureaus against [Plaintiffs]." (Compl. ¶¶ 32-33). The Court construes this as an attempt to plead a violation of 15 U.S.C. § 1681s-2, which governs the "[r]esponsibilities of furnishers of information to consumer reporting agencies."

Again, this claim is not adequately pleaded.  First, as a general matter, Plaintiffs'
allegations amount to little more than a recitation of legal conclusions without any factual
content from which the Court can determine that a plausible claim exists.  More particularly,
Plaintiffs have not pleaded in even a conclusory fashion all of the elements of a FCRA violation
under 15 U.S.C. § 1681s-2(b).[5]  In particular, Plaintiffs have not pleaded that they contacted a
consumer credit rating agency about any allegedly incorrect reports, that the agency notified any
of the Defendants regarding the dispute, or that Defendants failed to properly investigate.  *See
LaCourte v. JP Morgan Chase & Co.*, No. 12-cv-9453, 2013 U.S. Dist. LEXIS 129993, at *30
(S.D.N.Y. Sept. 4, 2013) ("Here, the First Amended Complaint does not allege that LaCourte
ever disputed any item in his file with a credit reporting agency, much less that any defendant
received notice of such a dispute and failed to take appropriate action."); *Crawford v. Duncan*,
No. 11-cv-3774, 2013 U.S. Dist. LEXIS 48368, at *10-12 (E.D.N.Y. Mar. 25, 2013) (explaining
that § 1681s-2(b), which governs the obligations of an entity who furnishes information to a
credit reporting service which is subsequently disputed by the consumer, requires notice of such
a dispute); *cf. Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 150-52 (2d Cir. 2012)
(explaining that the district court did not err in denying leave to amend a complaint that did not
allege that the plaintiff had submitted a dispute to a credit reporting agency).  As a result,
Plaintiffs have not properly pleaded the elements of a FCRA violation and the Court grants the
motion to dismiss as to this claim.

### 3.  The Truth in Lending Act ("TILA") and Real Estate Settlement Procedures Act ("RESPA")

---

[5] The Second Circuit has held that 15 U.S.C. § 1681s-2(a) does not give rise to a private cause of action. *Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 151 (2d Cir. 2012).

Assuming that Plaintiffs intended to raise TILA and RESPA claims and that their inclusion of these claims in a laundry list of causes of action is sufficient to do so, *see, e.g.*, *In re Apple REITs Litig.*, No. 11-cv-2919, 2013 U.S. Dist. LEXIS 48565, at *61-62 n.14 (E.D.N.Y. Apr. 3, 2013); *Moore v. City of New York*, No. 08-cv-2449 2011 U.S. Dist. LEXIS 20370, at *19-20 (E.D.N.Y. Feb. 28, 2011), they have failed to adequately plead these claims.  TILA was enacted to promote the informed use of credit by consumers and assure the meaningful disclosure of credit terms.  *See* 15 U.S.C. §§ 1601, 1631-1639h; *Maas v. Spencer Leasing Corp.*, 2013 U.S. Dist. LEXIS 134426, at *16-18 (E.D.N.Y. Aug. 19, 2013).  RESPA was enacted to provide consumers with timely information about the nature and costs of the real estate settlement process and protect them from unnecessarily high charges caused by certain abusive practices.  12 U.S.C. § 2601; *Gorbaty v. Wells Fargo Bank, N.A.*, 2012 U.S. Dist. LEXIS 55284, 9-12 (E.D.N.Y. Apr. 18, 2012).  A review of the Complaint provides the Court with no basis to even speculate as to the legal theory on which TILA and RESPA are invoked, let alone a basis to find that the Complaint pleads facts sufficient to state a plausible claim for relief.  These claims are also dismissed.

### 4.  State law claims

Although, as noted above, the Court has the authority to exercise supplemental jurisdiction over Plaintiffs' state law claims, if the claims constituting the basis for federal jurisdiction in an action have been dismissed, the decision whether to exercise such supplemental jurisdiction is left to the discretion of the Court.  *See* 13 U.S.C. § 1367; *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 117-18 (2d Cir. 2013).  Indeed, once the federal claims in an action have been dismissed and all that remains are state law claims brought pursuant to the Court's supplemental jurisdiction, courts usually decline to exercise that jurisdiction, considering

16

the values of judicial economy, convenience, fairness, and comity. *See id.* Moreover, this case involves a unique circumstance in which the state court to which this action would be returned has already expended substantial effort to resolve the state law causes of action, and remanding the case would thus allow for both conservation of resources and the opportunity for the state court to weigh in on issues of law on which it is an expert.[6]

The Court's resolution of the federal causes of action and dismissal of the FDIC have resolved the jurisdictional basis for maintaining this action in federal court under 28 U.S.C. § 1331. *See, e.g.*, *Parker v. Rocco*, 252 F.3d 663, 665-66 (2d Cir. 2001); *Nell*, 2012 U.S. Dist. LEXIS 42173, at *21-22 (citing *Mizuna, Ltd. v. Crossland Fed. Sav. Bank*, 90 F.3d 650, 657 (2d Cir. 1996), and noting that courts in these circumstances also consider whether substantial judicial resources have been expended, whether resolution is imminent, and whether remand would facilitate a bald effort to escape an unfavorable outcome). It is unclear, however, whether diversity jurisdiction exists or whether any adjudication of the remaining claims by this Court would be pursuant to the Court's supplemental jurisdiction. (*See* Dkt. No. 1 (Notice of Removal; Complaint)). Thus, the Court orders that Defendants submit to the Court and serve on Plaintiffs a letter, no later than April 4, 2014, stating their position on whether this Court has jurisdiction independent of its supplemental jurisdiction under § 1367 and, if so, the legal basis for this jurisdiction. No later than April 4, 2014, Plaintiffs may also submit a letter to this Court through the Pro Se Office addressing this point, if they choose to do so.

---

[6] Due to an error, after the removal of this case to federal court, the judge to whom this case was previously assigned in New York state court inadvertently issued an opinion disposing of the matter, which was subsequently recalled due to lack of jurisdiction. (Dkt. Nos. 30-31).

## CONCLUSION

The Plaintiffs' motion to remand is DENIED. The FDIC's motion to dismiss is GRANTED. Bank of America's and the JP Morgan Defendant's motions to dismiss are GRANTED IN PART as to Plaintiffs' RICO, FCRA, TILA, and RESPA claims, and are DENIED IN PART as to Plaintiffs' state law claims, without prejudice to raise the arguments made in the motions to dismiss in the future following the Court's assessment of whether jurisdiction over Plaintiffs' state law claims is appropriate in this Court. This decision resolves docket numbers 7, 13, 20, and 22.

SO ORDERED.


Dated: March ___, 2014
       New York, New York

_____
ALISON J. NATHAN
United States District Judge

18